**UNITED STATES BANKRUPTCY COURT**  **Hearing Date: March 17, 2010**
**EASTERN DISTRICT OF NEW YORK**  **Time: 2:30 p.m.**
---------------------------------------------------------------x

In re                                                          Chapter 11

    East Fourteen Gardens Inc.,                          Case No. 09-47792-cec

                 Debtor.

---------------------------------------------------------------x

## EAST FOURTEEN GARDENS INC.'S AMENDED DISCLOSURE STATEMENT, DATED MARCH 16, 2010

I. **INTRODUCTION**.

This is the amended disclosure statement (the "Amended Disclosure Statement") in the chapter 11 case of East Fourteen Gardens Inc. (the "Debtor"). This Amended Disclosure Statement contains information about the Debtor and describes the Debtor's Amended Plan of Reorganization (the "Amended Plan") filed by the Debtor on March 16, 2010. A copy of the Amended Plan is attached to this Amended Disclosure Statement as Exhibit A. ***Your rights may be affected. You should read the Amended Plan and this Amended Disclosure Statement carefully and discuss the documents with your attorney. If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Amended Plan are discussed at pages 6 thru 10 of this Amended Disclosure Statement.

    A.    **Purpose of This Document.**

This Amended Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;
- How the Amended Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest in the event the Amended Plan is confirmed);
- Who can vote or object to the Amended Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Amended Plan;
- Why the Debtor believes the Amended Plan is feasible, and how the treatment of your claim or equity interest under the Amended Plan compares to what you would receive on your claim or equity interest in a liquidation; and
- The effect of confirmation of the Amended Plan.

Be sure to read the Amended Plan as well as the Amended Disclosure Statement. This Amended Disclosure Statement describes the Amended Plan, but it is the Amended Plan itself that will, if confirmed, establish your rights.

    B.    **Deadlines for Voting and Objecting to Amended Plan, Date of Amended Plan Confirmation Hearing**.

The Court has not yet confirmed the Amended Plan described in this Amended Disclosure Statement. This section describes the procedures pursuant to which the Amended Plan will or will not be confirmed.

    1.    *Time and Place of the Hearing to Finally Approve This Amended Disclosure Statement and Confirm the Amended Plan.*

The hearing which the Court will determine whether to finally approve this Amended Disclosure Statement will take place on March 17, 2010 at 2:30 p.m. at the U.S. Bankruptcy Court, E.D.N.Y., 271 Cadman Plaza East, Courtroom 3529, Brooklyn, New York 11201.

    2.    *Deadline For Voting to Accept or Reject the* Amended Plan.

If you are entitled to vote to accept or reject the Amended Plan, please vote on the enclosed ballot and return the ballot in the enclosed envelope to:

    The Law Offices of David Carlebach, Esq.
    40 Exchange Place, Suite 1306
    New York, New York 10005

See section IV. A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ , 2010 or it will not be counted.

    3.    *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Amended Disclosure Statement or to the confirmation of the Amended Plan must be filed with the Court by _____ , 2010 , with a courtesy copy to Chambers and served upon:

       David Carlebach, Esq.
       Law Offices of David Carlebach, Esq.
       40 Exchange Place, Suite 1306
       New York, New York 10005

       Jacqueline Frome, Esq.
       Office of the US Trustee
       271 Cadman Plaza East
       Suite 4529
       Brooklyn, NY 11201

       Deborah J. Dwyer, Esq.
       New York State Dept. of Taxation and Finance
       District Tax Attorney
       1740 Broadway, 16th Floor
       New York, NY 10019

       Michael J. Shavel, Esq.
       Spector, Gaden & Rosen, P.C.
       1000 Lenola Rd.
       Moorestown, NJ 08057

       Diane Ilacqua
       c/o Xspand
       115 S. Jefferson Rd., Bldg. D-1
       Whippany, NJ 07981

    4.    *Contact Person for More Information.*

If you want additional information about the Amended Plan, please contact:

       David Carlebach, Esq.
       The Law Offices of David Carlebach Esq.
       40 Exchange Place, Suite 1306, New York, New York 10005
       Tel. number: (212) 785-3041

C.    **Disclaimer**.

*The Court has approved this Amended Disclosure Statement as containing adequate information to enable parties affected by the Amended Plan to make an informed judgment about its terms. The Court has not yet determined whether the Amended Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Amended Disclosure Statement does not constitute an endorsement of the Amended Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Amended Disclosure Statement*

*is subject to final approval at the hearing on confirmation of the Amended Plan. Objections to the adequacy of this Amended Disclosure Statement must be filed by _____,2010.*

II. **BACKGROUND.**

    A. **Description and History of the Debtor's Business.**

The Debtor is a New York corporation formed on May 31, 2007. The Debtor is primarily in the business of ownership and operation of residential real estate located at 1317 East 14th Street, Brooklyn, New York 11234 (the "Premises"). The Debtor has continued to own the property since the filing of the bankruptcy petition on September 9, 2009 (the "Petition Date"), as debtor-in-possession pursuant to §§ 1107 and 1108 of the United States Bankruptcy Code (the "Bankruptcy Code").

    B. **Insiders of the Debtor**.

The following is a detailed list of the names of the Debtor's insiders as defined in § 101(31) Bankruptcy Code and their relationship to the Debtor, along with the compensation paid by the Debtor to that person or entity during the two years prior to the commencement of the Debtor's bankruptcy case, as well as compensation paid during the pendency of this chapter 11 case.

| Name of Insider | Relationship to Debtor | Compensation During Pendency of Chapter 11 Case |
|---|---|---|
| Yehuda Nelkenbaum | President | 0 |

    C. **Management of the Debtor Before and During the Bankruptcy.**

During the two years prior to the Petition Date and during the bankruptcy case, Yehuda Nelkenbaum was the President of the Debtor. After the Effective Date of the order confirming the Amended Plan, Yehuda Nelkenbaum will continue to be the President and sole Officer of the Debtor.

    D. **Events Leading to Chapter 11 Filing**.

Before the Petition Date, the unpaid principal and interest of the Debtor's mortgage with Marke Holdings, Inc. ("Marke") became due; however, the Debtor was unable to meet its obligations with Marke and consequently defaulted on its loan. By letter dated July 10, 2009, Marke sent a notice of default, and it made a demand for payment (the "Notice") of the total balance due within ten days of the date of the Notice. As a result of the acceleration of the mortgage and demand for payment, the Debtor was unable to pay its debts when they became due and thus forced to file for bankruptcy relief on the Petition Date.

E.  **Significant Events During the Bankruptcy Case**.

- There has not been any asset sales outside the ordinary course of business, debtor-in-possession financing, or cash collateral orders.
- On September 23, 2009, the Debtor filed a motion for joint administration of the Debtor's affiliate, Philmont Square Inc., which also filed for bankruptcy relief on the Petition Date (ECF 11), and on October 29, 2009, the Court entered an Order directing procedural consolidation and joint administration of the Debtor and Philmont Square Inc. (ECF 23). An Amended Order was subsequently entered on November 2, 2009 (ECF 26).
- On October 6, 2009, an Application to Employ the Law Offices of David Carlebach, Esq. as counsel to the Debtor was filed with the Court (ECF 14), and on December 3, 2009, the Court entered an Order granting the Debtor's application to employ the Law Offices of David Carlebach, Esq. as Counsel to the Debtor (ECF 39).
- On November 2, 2009, this Court established the bar date for all creditors to file proofs of claim, that deadline is January 4, 2010 (ECF 27).
- On January 28, 2010, the Debtor and Marke signed a Stipulation of Settlement (ECF 24) (the "Settlement Agreement" or "Settlement"). The Settlement Agreement is annexed hereto as Exhibit G. In consideration of mutual promises, the Debtor and Marke agree that within sixty (60) days of the entry of an order approving the Settlement Agreement the Debtor will convey to Marke title to the Debtor's Property by a Deed in Lieu of Foreclosure and to assign to Marke its rights under the leases.
   The Debtor and Marke shall execute and deliver to the Debtor's tenants, a Subordination of Non-Disturbance Agreement, in which the tenants shall recognize that the Mortgage is senior to the interests of the tenants pursuant to the Debtor's leases. The Debtor agrees that it shall not execute any additional apartment leases without the express consent of Marke.
- Additionally, the Debtor and Marke agree that all the Debtor's rental income shall be deposited into the Debtor's Debtor-in-Possession Account, and that Marke shall not unreasonably withhold consent to the use of cash collateral, provided that the Debtor's budget is acceptable to Marke in its absolute discretion. In the event that the cash collateral is not sufficient to pay operating costs, the Debtor is responsible for the payment.
- To date, this Court has not entered an order approving the Settlement Agreement.
- There are no actions or proceedings pending or threatened against the Debtor or its property.

F.  **Projected Recovery of Avoidable Transfers**.

The Debtor does not intend to pursue any known preference, fraudulent conveyance, or other avoidance actions.

G.  **Claims Objections.**

Except to the extent that a claim is already allowed pursuant to a final, non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Amended Plan.

### H.    **Current and Historical Financial Conditions**.

The identity and fair market value of the estate's assets are listed in Exhibit B.

A summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit C.

## III.    **SUMMARY OF THE AMENDED PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**.

### A.    **Purpose of the Amended Plan for Reorganization.**

As required by the Bankruptcy Code, the Amended Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Amended Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Amended Plan is confirmed, your recovery will be limited to the amount provided in the Amended Plan.

### B.    **Unclassified Claims**.

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. They are not considered impaired, and holders of such claims do not vote on the Amended Plan. They may, however, object if, in their view, their treatment under the Amended Plan does not comply with that required by the Bankruptcy Code. As such, the Amended Plan proponent has *not* placed the following claims in any class:

- *Administrative Expenses*.

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Bankruptcy Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before Petition Date. The Code requires all administrative expenses to be paid on the Effective Date of the Amended Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Allowed Professional Fees, as approved by the Court | Approximately $25,000.00 | Paid in full on the Effective Date. |
| Office of the U.S. Trustee fees | $650.00 | Paid in full on the Effective Date. |

C. **Classes of Claims and Equity Interests**.

The following are the classes of claims set forth in the Amended Plan, and the proposed treatment that they will receive under the Plan:

1. *Classes of Secured Claims*.

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Bankruptcy Code. If the value of the collateral or setoff securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and the proposed treatment under the Plan:

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| I | *Secured claim of:*<br>Marke Holdings, LLC<br><br>Collateral description:<br>First Mortgage on Debtor's property located at: 1317 East 14th Street, Brooklyn, NY 11234<br><br>Priority Amount:<br>$7,980,810.65 | NO | impaired | In accordance with the terms of that certain Settlement Agreement between the Debtor and Marke, the Debtor conveys to Marke title to the Debtor's Property by a Deed in Lieu of Foreclosure and to assign to Marke its rights under the leases. |
| II | *Secured claim of:*<br>NYC Water Board<br><br>Collateral description:<br>Secured lien on Debtor's property located at: 1317 East 14th Street, Brooklyn, NY 11234<br><br>Priority Amount:<br>$26,696.24 | NO | unimpaired | Paid in full on the Effective Date. |
| III | *Secured claim of:*<br>NYCTL 2009-A Trust<br>XSPAND<br>Diane Ilacqua | NO | unimpaired | Paid in full on the Effective Date. |

| | | | | |
|---|---|---|---|---|
| | c/o Xspand<br><br>Collateral description: Secured Lien on Debtor's property located at: 1317 East 14th Street, Brooklyn, NY 11234<br><br>Secured Amount: $181,633.08 | | | |

2. *Classes of Priority Unsecured Claims.*

Certain priority unsecured claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code are required to be placed in classes. The Code requires that each holder of such claim receives cash on the Effective Date of the Amended Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| IV | *Priority Unsecured Claim of:*<br>New York State Dept. of Taxation and Finance<br><br>Non-Priority Amount:<br>$24,845.00 | No | unimpaired | Paid in full on the Effective Date. |

3. *Class of General Unsecured Claims.*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Bankruptcy Code.

The following chart lists all classes containing the Debtor's unsecured prepetition claims and the proposed treatment under the Plan:

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| V | Non-Insider General Unsecured claims of: all allowed non-insider general unsecured claims scheduled by the Debtor. (See ECF 19, Schedule F) Non-Priority Amount: $1,021,188.89 | NO | impaired | Non-Insider general unsecured creditors holding allowed claims will receive distributions, which the proponent of this Amended Plan has valued at approximately five (5) cents on the dollar. |

4.     *Class of Equity Interest Holders.*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders.

The following chart sets forth the Amended Plan's proposed treatment of the class of equity interest holders.

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| VI | Equity Interest Holder: Yehuda Nelkenbaum 100% Equity interest holder | unimpaired | Will continue to retain equity interest in exchange for new value contribution. |

D.     **Means of Implementing the Amended Plan.**

1.     *Source of Payments.*

The source of payment for all classes of creditors including, Class II, III, IV, and V will be funded by the Debtor's President, Yehuda Nelkenbaum.

2.     *Post-confirmation Management.*

Yehuda Nelkenbaum will continue as President of the Debtor, post confirmation and will receive no management fee for services rendered to the Debtor.

E.  **Risk Factors**.

The Debtor does not believe that there are any risk factors with respect to the distributions required under the Amended Plan. Pursuant to the terms of the Settlement Agreement, Marke agrees to waive any distribution as an unsecured creditor.

F.  **Executory Contracts and Unexpired Leases**.

The Amended Plan, at Article 6.01, lists all executory contracts and unexpired leases that the Debtor will assume under the Amended Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article 6.01 lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Amended Plan by the deadline for objecting to the confirmation of the Amended Plan, unless the Court sets an earlier time.

G.  **Tax Consequences of the Amended Plan.**

*Creditors and Equity Interest Holders Concerned with How the Amended Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.*

Pursuant to § 1146(a) of the Bankruptcy Code, the exemptions from transfer taxes for property transferred under this Plan apply upon Plan confirmation. The following shall not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, filing fee, sales or use tax or similar tax: (1) the execution and implementation of the Settlement Agreement, including the transfer of any assets, sale, liquidation, transfer, foreclosure, abandonment or other disposition in furtherance of the Settlement Agreement terms; (2) any restructuring transaction; or (3) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments, applications, certificates or statements executed or filed in connection with any of the foregoing or pursuant to the Plan, and any transfer of first lien collateral in accordance with the terms of the Plan.

IV.  **CONFIRMATION REQUIREMENTS AND PROCEDURES**.

To be confirmable, the Amended Plan must meet the requirements listed in § 1129(a) or (b) of the Bankruptcy Code. The requirements include that the Amended Plan must be proposed in good faith; at least one impaired class of claims must accept the Amended Plan, without counting

votes of insiders; the Amended Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Amended Plan; and the Amended Plan must be feasible. These requirements are not the only requirements listed in § 1129 of the Bankruptcy Code, and they are not the only requirements for confirmation. The Debtor does not believes there is an impaired class in this case who is deemed to have accepted the Amended Plan pursuant to § 1129(a)(8)(B).

        A.    **Who May Vote or Object**.

Any party in interest may object to the confirmation of the Amended Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Amended Plan. A creditor or equity interest holder has a right to vote for or against the Amended Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Amended Plan Proponent believes that no classes are impaired and that holders of claims in each class are therefore not entitled to vote to accept or reject the Amended Plan. Notwithstanding the above, the Debtor proposes to nevertheless send a ballot to the unimpaired secured creditors, although the Debtor as previously stated believes that it is has no right to vote.

To the extent that Marke has an unsecured claim, Marke intends to vote its unsecured claim in favor of the Plan.

        1.    *Allowed Claim or Allowed Equity Interest.*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Amended Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***At the time of filing this Amended Disclosure Statement, the deadline for filing a proof of claim in this case is January 4, 2010.***

        2.    *Impaired Claim or Impaired Equity Interest.*

As noted above, the holder of an allowed claim or allowed equity interest has the right to vote only if it is in a class that is *impaired* under the Amended Plan. As provided in § 1124 of the Bankruptcy Code, a class is considered impaired if the Amended Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is **Not** Entitled to Vote.*

The holders of the following five types of claims and equity interests are ***not*** entitled to vote:

- Holders of claims and equity interests that have been disallowed by an order of the Court;

- Holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests", unless they have been "allowed" for voting purposes.

- Holders of claims or equity interests in unimpaired classes;

- Holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code;

- Holders of claims or equity interests in classes that do not receive or retain any value under the Amended Plan; and

- Administrative expenses.

***Even If You Are Not Entitled to Vote on the Amended Plan, You Have a Right to Object to the Confirmation of the Amended Plan and to the Adequacy of the Amended Disclosure Statement.***

### 4. *Who Can Vote in More than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Amended Plan in each capacity, and should cast one ballot for each claim.

### B. **Votes Necessary to Confirm the Amended Plan.**

If impaired classes exist, the Court cannot confirm the Amended Plan unless (1) at least one impaired class of creditors has accepted the Amended Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Amended Plan, unless the Amended Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

1.      *Votes Necessary for a Class to Accept the Amended Plan*.

A class of claims accepts the Amended Plan if both of the following occur: (1) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast their votes to accept the Amended Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Amended Plan.

A class of equity interests accepts the Amended Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Amended Plan.

2.      *Treatment of Non-accepting Classes*.

Even if one or more impaired classes reject the Amended Plan, the Court may nonetheless confirm the Amended Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Bankruptcy Code. An Amended Plan that binds non-accepting classes is commonly referred to as a "cram down" Amended Plan.

The Code allows the Amended Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation, except the voting requirements of § 1129(a)(8) of the Bankruptcy Code does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Amended Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.      **Liquidation Analysis**.

To confirm the Amended Plan, the Court must find that all creditors and equity interest holders who do not accept the Amended Plan will receive at least as much under the Amended Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Amended Disclosure Statement as Exhibit D.

D.      **Feasibility**.

The Court must find that confirmation of the Amended Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Amended Plan.

1.      *Ability to Fund Amended Plan.*

The Amended Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Amended Plan to pay all the claims and expenses that are entitled to be

paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Amended Plan, and the sources of that cash are attached to this Amended Disclosure Statement as Exhibit E. The Amended Plan Proponent has provided projected financial information. Those projections are listed in Exhibit F.

>        2.        *Ability to Make Future Amended Plan Payments and Operate Without Further Reorganization*.

Upon confirmation of the Amended Plan and the entry of an order approving the terms of the Settlement Agreement between the Debtor and Marke, the Debtor intends to convey to Marke title to the Debtor's Property by a Deed in Lieu of Foreclosure and to assign to Marke its rights under the leases.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

V.    **EFFECT OF CONFIRMATION OF AMENDED PLAN.**

   A.    **"NO DISCHARGE OF DEBTOR."**

   B.    **Modification of Amended Plan.**

The Amended Plan Proponent may modify the Amended Plan at any time before confirmation of the Amended Plan. However, the Court may require a new Amended Disclosure Statement and/or new voting on the Amended Plan.

The Amended Plan Proponent may also seek to modify the Amended Plan at any time after confirmation only if (1) the Amended Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

C.    **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Amended Plan Proponent, or such other party as the Court shall designate in the Amended Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Dated: New York, New York　　　　**EAST FOURTEEN GARDENS INC.**
　　　　March 16, 2010

　　　　　　　　　　　　　　　　　　By: s/Yehuda Nelkenbaum, President

　　　　　　　　　　　　　　　　　　　Yehuda Nelkenbaum, President


**LAW OFFICES OF DAVID CARLEBACH, ESQ.**
Attorneys for Debtor

By:　s/ David Carlebach (dc-7350)
　　　David Carlebach (DC-7350)
　　　40 Exchange Place
　　　New York, New York 10005
　　　(212) 785-3041