```
 1

 2    UNITED STATES BANKRUPTCY COURT

 3    EASTERN DISTRICT OF NEW YORK

 4    Case No. 09-47792-cec

 5    - - - - - - - - - - - - - - - - - - - -x

 6    In the Matter of:

 7

 8    EAST FOURTEEN GARDENS INC.,

 9

10             Debtor.

11

12    - - - - - - - - - - - - - - - - - - - -x

13

14                  U.S. Bankruptcy Court

15                  271 Cadman Plaza East

16                  Brooklyn, New York

17

18                  March 16, 2011

19                  3:26 PM

20

21    B E F O R E:

22    HON. CARLA E. CRAIG

23    U.S. BANKRUPTCY JUDGE

24

25
```

Case 1-09-47792-cec    Doc 88    Filed 03/18/11    Entered 03/18/11 09:26:50

```
 1
 2   Order Scheduling Status Conference for the Purpose of
 3   Determining an Appropriate Schedule for the Proper
 4   Administration of this Case [9]
 5
 6   Motion to Approve Modification of a Confirmed Plan [86]
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25   Transcribed by:  Dena Page
```

```
 1

 2   A P P E A R A N C E S :

 3   LAW OFFICES OF DAVID CARLEBACH

 4        Attorneys for Debtor

 5        40 Exchange Place

 6        New York, NY 10005

 7

 8   BY:  DAVID CARLEBACH, ESQ.

 9

10

11   NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE

12        Attorneys for New York State

13        1740 Broadway

14        New York, NY 10019

15

16   BY:  DEBORAH DWYER, ESQ.

17

18

19   UNITED STATES DEPARTMENT OF JUSTICE

20        Office of the United States Trustee

21        271 Cadman Plaza

22        Brooklyn, NY 11201

23

24   BY:  JACQUELINE A. FROME, ESQ.

25
```

EAST FOURTEEN GARDENS INC.

```
 1                  P R O C E E D I N G S
 2            THE CLERK:  Number 14 and 15, East Fourteen Gardens.
 3            MR. CARLEBACH:  Good afternoon, Your Honor.  This is
 4   the debtor's motion --
 5            THE CLERK:  State your name, please.
 6            MR. CARLEBACH:  David Carlebach representing the
 7   debtor, East Fourteen Gardens Inc.  This is the debtor's motion
 8   to modify the plan without the need for further solicitation.
 9   It's being done pursuant to Section 1127(a) and, I believe,
10   Rule 3019(b) which effectively contemplates that where there
11   has not been substantial consummation of a plan, the Court has
12   the ability to order that the plan not be resolicited for a
13   vote to creditors.  Essentially --
14            THE COURT:  And why -- and you don't think this is a
15   material modification?
16            MR. CARLEBACH:  No.  Essentially, the only thing
17   that's happening here is that the settlement agreement
18   contemplated a deed in lieu of foreclosure.  We were
19   effectively transferring the property to the mortgagee.  They
20   asked for a deed in lieu of foreclosure.  They discovered that
21   if they took a deed in lieu of foreclosure, the mortgage would
22   be extinguished, and they would -- apparently, still needed to
23   have a mortgage on the property.  They would have to go and, in
24   Pennsylvania, pay a couple of hundred thousand dollars in
25   mortgage recording tax to record a new mortgage.  So they
```

1  requested that instead of having it a deed in lieu of

2  foreclosure, it be a simple quit claim deed and that the

3  mortgage remain in existence.  And it simply required that

4  modification of the settlement agreement.

5           In exchange for that, they did give substantial

6  benefits to the debtor.  The 67,000 dollar credit against

7  certain taxes which we would have otherwise had to be

8  responsible for, they agreed to be responsible for it.

9           But the point being that there's absolutely no party

10 whose rights were affected in any way by this modification.

11          THE COURT:  Here's what I would say.  As long as

12 you're putting -- is that 67,000 dollars is going to the

13 unsecured creditors in addition to what's already in the plan

14 for them, then I would agree.  But they might want to know

15 whether to vote on -- whether they want to accept a plan where

16 there's 67,000 dollars more because you were only going to pay

17 them -- you're not paying them very much, right?  What's the

18 amount?

19          MR. CARLEBACH:  I believe it was ten cents on the

20 dollar.

21          THE COURT:  Ten cents on the dollar which comes to

22 five percent -- five percent distribution.  So I'd say that

23 this money should not be going into the debtor's pocket; it

24 should go to the unsecured creditors.

25          MR. CARLEBACH:  Well, essentially, it was the debtor's

1   principal that was going to have to fund these taxes, so it's

2   really -- it's an accommodation to the debtor's principal.  It

3   would be -- it's simply -- it's money that he would have

4   otherwise had to go into his pocket to fund.

5           THE COURT:  Well, he was -- but, the plan was

6   confirmed on the basis that that was what was going to happen.

7           MR. CARLEBACH:  That's correct.

8           THE COURT:  And now you've got an extra 67,000

9   dollars, and why shouldn't that go to the unsecured creditors

10  instead -- if you want to tell -- if you're telling me that

11  nothing has happened that would change their vote in this plan,

12  if they knew that there's another 67,000 dollars here but it's

13  going into the debtor's principal's pocket, then that might be

14  something that they find material.

15          MR. CARLEBACH:  I understand your point.  I would have

16  to go back to the debtor's principal and I would have to ask,

17  then, for an adjournment of the motion because I can't -- the

18  debtor's principal's unfortunately not here now.  I can't

19  consent to that on the record without his --

20          THE COURT:  Understood.

21          MR. CARLEBACH:  Yes, I would -- I would simply ask

22  that the motion be adjourned subject to --

23          THE COURT:  Yeah, I assume this doesn't have to be a

24  lengthy adjournment.

25          MR. CARLEBACH:  No, I mean, and in fact, it's the --

1    the most unhappy people are going to be the mortgagee who

2    really want to -- apparently the close --

3            THE COURT:  Let's do it -- let's make it a short

4    adjournment because I don't see why a windfall should go to the

5    debtor's principal when in -- especially in a case where

6    there's a five percent distribution over time, right?  Not even

7    up front.

8            MR. CARLEBACH:  I don't disagree with Your Honor.  I

9    would simply -- the characterization of a windfall where you

10   would have to pay X and it's --

11           THE COURT:  Well, it's a windfall in the sense that a

12   plan was confirmed based upon a transaction -- and a plan that

13   was approved pursuant to which he agreed to fund this amount.

14   He agreed that -- or, it was contemplated in the plan that this

15   amount was going to be funded by him.

16           MR. CARLEBACH:  That's correct.

17           THE COURT:  So this development here is a windfall in

18   the sense that it was -- it came about not by any effort or

19   activity that he undertook, so it's a windfall for somebody.

20   And it ought to be a windfall to the unsecured creditors, not

21   to him.

22           MR. CARLEBACH:  It was certainly unexpected.  That I

23   was -- so --

24           THE COURT:  Okay.

25           MR. CARLEBACH:  I'm not -- I don't mean to -- if a

1   windfall is the way the Court --

2           THE COURT:  Windfall in the sense that it wasn't

3   somehow -- that he didn't somehow -- there was no -- any

4   consideration given by him for this, right?

5           MR. CARLEBACH:  This is correct.  I only take issue

6   with the windfall is that there isn't any money coming into his

7   pocket.  It just means that he's got to go into his pocket a

8   little less deep than he might have.

9           THE COURT:  By windfall, I mean something that falls

10  out of a tree, which I think -- guess is the literal meaning of

11  windfall, that it's not something that was expected or

12  contemplated or obtained through a transaction for which there

13  was consideration given by him.

14          MR. CARLEBACH:  This is true.

15          THE COURT:  Okay, so that's my view.  That the money

16  should go to the unsecured creditors.  And so there may need to

17  be a further amendment to the plan that provides that they get

18  a five percent distribution plus the 67,000 dollars up front.

19          MR. CARLEBACH:  And I assume that that would also not

20  require a resolicitation.

21          THE COURT:  I don't think that would require

22  resolicitation.

23          MR. CARLEBACH:  Okay, then I would simply --

24          THE COURT:  I don't see -- is there anybody who could

25  be potentially even disadvantaged by that?  I can't see how.

EAST FOURTEEN GARDENS INC.

1         MR. CARLEBACH:  By getting more money?  I don't think

2    so.

3         THE COURT:  Is there any class of creditors other than

4    the unsecured creditors?

5         MR. CARLEBACH:  The only creditors that are impaired

6    are the unsecureds.  Everybody else, priority and -- priority

7    is being paid in full, tax -- essentially tax claims are being

8    paid in full, and --

9         THE COURT:  Have they been -- they're being paid in

10   the course of this transaction, I suppose, right?

11        MR. CARLEBACH:  Correct.

12        THE COURT:  Yeah.

13        MR. CARLEBACH:  Correct.  In fact, New York State is

14   here.  There was an issue of some outstanding; we resolved

15   that.  But the plan contemplates one hundred percent of all

16   priority creditors and those issue were worked through during a

17   very lengthy closing which took a couple of months and --

18        THE COURT:  But I assume they're not being paid over

19   time.

20        MR. CARLEBACH:  No.

21        THE COURT:  They're being paid in the context of the

22   closing.

23        MR. CARLEBACH:  Correct.

24        THE COURT:  Yeah.

25        MR. CARLEBACH:  That's correct.

1                THE COURT:  Okay.  Okay, anything else?

2                Yes?

3                MS. DWYER:  Good afternoon, Your Honor.  Deborah

4    Dwyer, New York State Tax.

5                Your Honor, I just wanted to say that we've just been

6    handed the tax returns in this matter and they need to be

7    processed.  Not disputing anything that Mr. Carlebach says and

8    that we're going to be paid in full.  Whether or not the use of

9    the correct numbers, I don't know yet because tax returns have

10   just been presented.  So an adjournment works to the state's

11   advantage, as well --

12               THE COURT:  Okay.  All right.

13               MS. DWYER:  -- because we'll know what position we're

14   supposed to be in, then.

15               THE COURT:  How long?

16               MS. FROME:  Your Honor, if I may put on the record, we

17   haven't received any post-petition operating reports.  I've

18   spoken to counsel about that and he's told me he'll speak to

19   his client about updating those reports.  Just to put that on

20   the record.

21               THE COURT:  Okay, yes, please do.

22               MS. FROME:  Your Honor, also --

23               THE COURT:  Please bring the reports up to date, Mr.

24   Carlebach.

25               MR. CARLEBACH:  Yeah, I -- we will do that.  I would

1   ask for a brief adjournment on my motion, because as I said,

2   the mortgagee is very focused on getting the transaction

3   closed.  I will give the state --

4              THE COURT:  Can we give you a week on that?

5              MR. CARLEBACH:  That's fine.

6              THE COURT:  Is that -- 3/23?  Is that the date?  Yeah,

7   3/23's next week, right?  What time?  Is that okay, Tracy?

8              THE CLERK:  Let me just see what you have.  2:30.

9              THE COURT:  At 2:30.  Okay.

10             MR. CARLEBACH:  Okay.

11             THE COURT:  This is the only thing that's on the

12  calendar today other than the status conference.  I'm going to

13  put them both over to the 23rd, okay?

14             MS. DWYER:  Your Honor, just to say, it's going to

15  take us longer than a week to process the returns, though.  I

16  don't want to --

17             THE COURT:  Understood.  But there will be further

18  conferences, I think, until this case is -- 'til a final decree

19  is issued.  I mean, I don't know what issue -- I don't know --

20  what are you going to want from me about -- how does this

21  pertain to the Court, your review of these tax returns?

22             MS. DWYER:  It doesn't, Your Honor.

23             THE COURT:  Okay.

24             MS. DWYER:  I just need time to have this --

25             THE COURT:  Time for what, though.  Time from --

1       MS. DWYER:  They have to be processed; the tax returns

2  have to be processed, assuming they're correct.

3       MR. CARLEBACH:  Your Honor, I think I can put it in

4  context.  As we discussed, tax claims, these are -- this is

5  pursuant -- these tax returns are paying a proof of claim that

6  was filed by New York State.  And it's contemplated that we pay

7  that claim one hundred cents on the dollar.  So counsel for New

8  York State is simply saying we need to make sure that the

9  monies you've given us, in fact, pay that claim in full prior

10 to the closing of the case, and I've assured her, and as Your

11 Honor has suggested, there'll be enough time for her to do her

12 due diligence and make sure that those issues will be resolved.

13      THE COURT:  Then these are not real estate taxes, I

14 take it?

15      MS. DWYER:  No, this is corporation tax.

16      THE COURT:  Right, okay.  Have you been paid anything

17 on that?

18      MS. DWYER:  Well, I've just been handed several checks

19 today --

20      THE COURT:  Okay.

21      MS. DWYER:  -- as well, so.

22      THE COURT:  All right.  All right, so I'll put this

23 over to the 23rd.

24      MR. CARLEBACH:  Thank you, Your Honor.

25      MS. DWYER:  Thank you, Your Honor.

EAST FOURTEEN GARDENS INC.

1        MS. FROME:  Thank you, Your Honor.

2        Your Honor, before we go on to the next matter, may we

3   have leave to put in papers, if we need to respond?

4        THE COURT:  On what?

5        MS. FROME:  The proffers made by counsel today have

6   raised certain issues that I have not considered, and --

7        THE COURT:  Like what?

8        MS. FROME:  The -- I understood that deed to be -- I

9   understood it was still going to be a deed in lieu of

10  foreclosure, and it was going to be sold to another party and

11  the mortgage was going to be transferred to another party.  I

12  think I may have misunderstood, and I'd like to speak with Mr.

13  Carlebach about that.

14       THE COURT:  Well, how does that relate -- what issue

15  do you see coming up as a result of that?

16       MS. FROME:  I -- it sounded from the proffer like the

17  mortgage is going to stay with the debtor.

18       THE COURT:  No, it's being assigned --

19       MR. CARLEBACH:  No.

20       THE COURT:  -- I assume, right?

21       MR. CARLEBACH:  That's correct.  It's being assigned

22  to the mortgagee.  They're taking over the mortgage so they

23  don't have to --

24       MS. FROME:  Okay, that's what I --

25       THE COURT:  So they don't have to pay mortgage

1   recording tax.

2           MR. CARLEBACH:  Correct, correct.

3           MS. FROME:  So the debtor will not have -- okay.

4           MR. CARLEBACH:  No, the debtor will retain no interest

5   in this.

6           THE COURT:  Well, you can -- Ms. Frome, you can put in

7   papers any time you want to.  You --

8           MS. FROME:  I just ask because only -- it's a week

9   from today and it would be --

10          THE COURT:  Okay, do you need more -- are you asking

11  me to set this at a later date?

12          MS. FROME:  No, no, I'm not asking for more time, Your

13  Honor.

14          THE COURT:  All right, okay.

15          MR. CARLEBACH:  Incidentally, the transaction is set

16  forth very clearly in the exhibit, which you can take a look

17  and see that.

18          THE COURT:  Okay, thanks.

19          MS. FROME:  Thank you, Your Honor.

20       (Whereupon these proceedings were concluded at 3:38 PM)

21

22

23

24

25

1

2                          C E R T I F I C A T I O N

3

4    I, Dena Page, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8    *[signature: Dena Page]*

9
     _____
10
     DENA PAGE
11

12
     eScribers, LLC
13
     P.O. Box 7533
14
     New York, NY 10116
15

16
     Date:   March 17, 2011
17

18

19

20

21

22

23

24

25